And we'll turn to the last argument for today, which is Stark v. City of New York. Thank you. Mr. Wigner, you're on. Thank you, Your Honor. Good afternoon, Your Honors. At the outset, I think that it's important to focus on the time of the inquiry with respect to when you decide probable cause should be analyzed. Devin Peck, 2004 Supreme Court case, says probable cause is determined at the time of arrest. Now, this undermines one of the essential points in defendant's argument, which is that once they have a complaining victim who outlines a crime, that's the end of the inquiry. No additional information must be considered by the arresting officer before making the arrest. That's simply not accurate. There's multiple features to the law, but they're all well-established, measured from the time of the arrest. We look at the totality of the circumstances. There's, I believe the case of Stanwyck, where they talk about you have to look at the whole story just like the whole chapter of a book. There's Singer, which states a complaining witness, and in that case, complaining witness who signed something under oath, is to be believed unless there's evidence that the witness isn't reliable. Counsel, can I ask you to jump ahead? Because I think I understand your argument that at the time of arrest, you have to charge the police officer with everything they knew. What? So if they had just witnessed something that was clearly exculpatory, they can't just pretend they didn't see it. Correct. Let's assume for the sake of argument, I think taking every factual assumption and then some in your favor. Let's assume even that the police officer had watched this video. I watched the video. I can't make heads or tails out of it. So seven minutes I won't get back in my life? Even more because I kept replaying the last 30 seconds, so I think it ended up to I don't know how many minutes. It's dark, even when you adjust the brightness and everything. You can see that some people are running around a bit. Some things are happening behind a sign that is clearly blocking part of the video. And then the video ends. So you don't know what happened after the video. I don't understand how even if the police officer had seen this video, it could have affected the probable cause of termination in any way, making it better, worse, or indifferent. So explain to me what is on that video that I missed. I understand that it is dark. And I found that on my computer monitor at work, I could see it quite readily. And when I turned up the brightness, you can see the outlines of all the different figures. And when you take that in conjunction with what the cop already knew, I think it really calls into question the complaining witness to the point where they're no longer reliable for probable cause. So starting from the beginning, they have the plate number of the quote-unquote perpetrator's car. This is on a police report in GAA-031. They never run the plates on the car, but what's… Go to the video. Yes, I'm getting to that. What does that got to do with the video? Yes. The person with the drill, wearing lighter clothing, you can see them set the drill down, is clearly different from the two people who get into the car that are wearing darker, clearly, hacidic garb. So the car where he says, the perp's car, this is what the complaining victim said, isn't the perp's car. The person with the drill is separate from the two people who get into the car. So that's one way that it… The video tells us who owns the car? Well, it doesn't tell us who owns the car, but you have the alleged… It doesn't show the license plate either, does it? I'm sorry, I missed that, Your Honor. The video doesn't show a license plate. No, but you can see the alleged victim running up, looking at the license plate from behind the car. But we can't see it from the video, right? You can see somebody running up to behind the car, clearly trying to get a license plate as the car is driving away. Does the video show the license plate? I couldn't make out the license plate, but it does appear… The point of it is, is that the video shows two people who aren't the person with the drill driving away in this car. You're right, Your Honor. You say, well, that doesn't completely extinguish the possibility that the two people got into the car are not, you know, borrowing it from the person with the drill. But they're not the same. But we don't even know who they are. Well, they're the actual assailants. They're the actual vandals, rather. There was no assault shown in the video. And that, I think, gets to my second point, which is you have people from the community coming to the officer saying Mr. Grossman is confused. Right. The officer has no obligation to believe them. We'll take that, right? Under probable cause, you're not going to say that we have to draw all inferences in favor of the subject of the criminal complaint, are you? I'm saying that it all works together in the totality of the circumstances. And here's the point, that you have people coming and saying Grossman is confused. There's no ID procedure. Yes, Grossman shows up and says the person who did it is Moishe Stark, and here's their contact information. We know, taking the inferences in our favor, that there was no ID procedure beforehand, no rudimentary inquiry that says, all right, well, where'd you get this name Moishe Stark? How'd you get his information? What? Didn't he claim to know it? The officer said he shows up and says the person is Moishe Stark. I have their contact information. The complainant does. The complainant says this is the person. There's no evidence in the record of any further inquiry. Hang on, now you're conflating two things. There's evidence in the record that it was Mr. Stark, and that was the statement by the complainant, right? Right. So there's evidence. There's no evidence that who the complainant believes is Mr. Stark is actually the person who did the vandalism. Doesn't he sign the photograph and say that it is the person? After being threatened and taking that into our favor, I don't believe that's a credible identification procedure. In fact, I think it works for us. You have people saying, Mr. Grossman's confused. Mr. Grossman is never given a really rudimentary photo ID. Is this Moishe Stark? We have a photograph of him with his license. Well, you would agree that there's no requirement, there's no probable cause requirement of a photo ID before someone, a police officer, has probable cause to effectuate an arrest, right, in general? Well, in general, yes. But when you have somebody who says, I have this name, I have this identification, and you haven't gone the further step to say, well, wait a minute. I need to know how you know this name you've gotten is actually the person who assaulted you rather than somebody else saying, oh, yeah, I think that was Moishe Stark who did it. And we know that he did not take the inference. Is there case law about that? Suggesting that if someone comes forth and says, person X just assaulted me, the police don't have probable cause unless they conduct an independent inquiry to confirm that the person who claims to know who assaulted them really, really knows who this person is? Is there any case suggesting that? I don't know that there's the case that says that directly. But what there is is the case law that says you can accept a complaining witness until there's reason to start questioning whether or not they have the right person. She also never confirms that there's an injury. And I understand your point about the video and that perhaps they would have looked at it and said, well, this doesn't show me anything at all. I think it's worth mentioning that what the officer actually knew, which is the inquiry at issue here, is that Mr. Finkelstein, former US attorney, experienced defense lawyer, comes in and says, I have a video that exonerates my clients. And you have them playing the video in the deposition of Mr. Stark starting on January 1, 1930. Again, let's even assume in the most beneficial possible set of assumptions in your favor that it was shown and that the officer saw it. I know that's all disputed. Right. I don't understand how I watched it. I don't think it turns anything in favor of your client. Well, if you look at what's in the record, which- Actually, it shows your client was there with the drill. It does. That is true. So he's right at the scene. It does show he was there. And we don't know what happened behind the scene. And we don't know what happened immediately after that video stopped. Right? You see him walking away. But what we do know is that the description provided, and this is in the police report, that essentially Mr. Stark runs over and starts clubbing Mr. Grossman with the drill, that appears nowhere. You don't see the reaction of the people. Of course, this is just seven minutes out of what everyone else was going on. Just because it doesn't show him doing the act, I don't think that's exoneration to you. I do. Because it shows my client arriving and it shows my client leaving the scene. And the evidence, the statement by the complaining victim is, look at this particular place. It all happened right in front of my house. We have the beginning of right in front of my house and the end. Maybe it would have been better to trim it a little bit further. But taking all of the information, Mr. Grossman's statements, all of the different things that the officer said and saying, you know what? I still have probable cause here. This person is still reliable. The additional information just creates too many questions for probable cause. Thank you, Mr. Wessler. Very much. Thank you, Your Honor. You reserve two minutes. I've given you some extra time. I do appreciate that. Ms. Wessler. Good afternoon. May it please the Court, Assistant Corporation Counsel Deborah Wassell for the City of New York and Detective Estevez. I just want to very briefly correct the record, Your Honors. It's undisputed that Grossman identified Stark. Stark didn't dispute it below. He doesn't dispute it in his brief here. So to the extent there's an argument that's being made that the identification was somehow not made in the first two instances, that's raised for the first time here. He described it by name and address. Correct. They knew each other. There's no question that these two knew each other. Stark admits that in his deposition. In any event, as Your Honors have already made clear, this partial video of the events doesn't raise a triable issue of fact. It's not plainly exculpatory. You've watched the video. I watched the video. It is so dark that you can't see. It's not even evidence, let alone exculpatory. It's not evidence of much, Your Honor. And as you pointed out, the only thing it really confirms is that Stark was at the scene and he had the weapon in his hand that he's accused of hitting someone with. So to the extent the video provides any evidence, it's inculpatory rather than exculpatory. So given that evidence, there's nothing that would dissipate probable cause based on the identification given to Detective Estevez at the scene, or rather, after the event happened. If there are any other questions from the bench, I'm happy to answer them. You don't think that the police officer could have poured some oil on troubled waters by looking at the film? I mean, she could have looked at it. She's not required to. That's your argument. She's not required to. Under the circumstances that we're under, obviously on summary judgment, we have to take Stark's account as true that he did offer the video to her. Obviously, she says that she was never shown a video, but accepting is true that statement that she was offered the video and didn't watch it. At that point in the case where the victim had identified the perpetrator to her, said, this is the guy, here's his name, his address, his contact information, that's probable cause right there. And she's not under any obligation to investigate further. And in fact, this video, as I've mentioned, is not plainly exculpatory on its face. It would have required the detective to go out and perhaps obtain the rest of it or authenticate it in some way because it's not even clear what you're looking at from that video, which, as Stark says in the deposition, was shown on the lawyer's cell phone. So if none of us could see what was going on on a large computer screen, it's hard to imagine how she would have been able to see anything on a cell phone screen. If the court has no further questions, the city will rely on its briefing. No further questions. Mr. Wigner, you've got two minutes. Yes. Two things briefly. One, we're not suggesting only that they reviewed the video, but also that they would have talked to Mr. Finkelstein who could have run through what the video showed. We had defense counsel right there that the detective refused to- We don't deny what counsel just said, that they had an ID from the victim, he identified the perp, and they had probable cause. Is that correct? Absent other factors, I'll acknowledge, yes, it's correct. But this is the clause- So unless you have probable cause, how much further do you have to do? I have to believe this wasn't the only item on a Sergeant Estevez's desk at the time. How much more investigation does she have to do? Well, I think the answer is rudimentary. That's what Hernandez said. She had ID. Didn't she have ID? I mean, that's true, but in Singer it says, unless there's reasons to believe that this may not be accurate. And in the totality of the circumstances, I believe there are. And also I think it's worth mentioning when you're talking about Fourth Amendment reasonableness, you know, just saying a cop is so busy that they get to handcuff somebody is a pretty big deal. The existing standard here is very deferential to the police. This is, I'd say, one step too far, which is to say, look, you don't have to do a lot of investigation under the Fourth Amendment. But it's a reasonableness standard, and you should really do some police work to avoid my client spending the night in jail. You know, maybe some people believe this isn't a particularly big deal. This was his first arrest, and it was really meaningful for him. He filed a federal civil rights lawsuit. So, you know, maybe you do a little more. And I don't think it's unfair or against the case law to look at these facts and say, this is a case where you do a little more. Thanks, Mr. Rickman, very much. We'll reserve decision, and we are adjourned. Thank you.